| | | |
|---|---|---|
| AOC-E-105     Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice     Courts.ky.gov<br><br>CR 4.02; Cr Official Form 1 | <br><br>**CIVIL SUMMONS** | Case #: **21-CI-00176**<br>Court:   **CIRCUIT**<br>County: **JESSAMINE** |

*Plantiff,* **BANKS ENGINEERING VS. NATIONWIDE MUTUAL INSURANCE COMPANY ET,** *Defendant*

TO:  **CORPORATION SERVICE COMPANY**

     **421 WEST MAIN STREET**

     **FRANKFORT, KY 40601**

Memo: Related party is NATIONWIDE MUTUAL INSURANCE COMPANY

The Commonwealth of Kentucky to Defendant:
**NATIONWIDE MUTUAL INSURANCE COMPANY**

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

                                   Jessamine Circuit Clerk
                                   Date: 3/30/2021

---

### Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

  To: _____

☐ Not Served because: _____

Date: _____, 20_____

                                             _____
                                           Served By
                                           _____
                                           Title

Summons ID: 332730022728615@00000163801
CIRCUIT: 21-CI-00176 Certified Mail
BANKS ENGINEERING VS. NATIONWIDE MUTUAL INSURANCE COMPANY ET



Page 1 of 1



*Presiding Judge: HON. HUNTER DAUGHERTY (613171)*

*Package:000002 of 000029*

*Package : 000002 of 000029*

Exhbiit A

Filed      21-CI-00176      03/30/2021      Doug Fain, Jessamine Circuit Clerk

COMMONWEALTH OF KENTUCKY
13TH JUDICIAL DISTRICT
JESSAMINE CIRCUIT COURT
CIVIL ACTION NO. 21-CI-_____

BANKS ENGINEERING, INC.                                    PLAINTIFF

vs                              **COMPLAINT**

NATIONWIDE MUTUAL INSURANCE
COMPANY AND NATIONAL CASUALTY
COMPANY                                                    DEFENDANTS

> **SERVE:  Nationwide Mutual Insurance Company**
> **Corporation Service Company**
> **421 West Main Street**
> **Frankfort, Kentucky 40601**
>
> **SERVE:  National Casualty Company**
> **Corporation Service Company**
> **421 West Main Street**
> **Frankfort, Kentucky 40601**

**********************************

Comes the Plaintiff, Banks Engineering, Inc,. by counsel, and for its Complaint for Declaratory Relief against the Defendants states as follows:

1. Plaintiff is a corporation incorporated under the laws of the Commonwealth of Kentucky qualified to do business and doing business in the Commonwealth of Kentucky.   Plaintiff is and has at all times mentioned herein been engaged in the business of engineering and land surveying.

2. The Defendants, The Nationwide Mutual Insurance Company and The National Casualty Company are insurance companies qualified to do business in the Commonwealth of Kentucky for the purpose of providing insurance services in said

Filed      21-CI-00176      03/30/2021      Doug Fain, Jessamine Circuit Clerk

state and exist with the power to sue and/or to be sued.  During all relevant times herein mentioned, Defendants, The Nationwide Mutual Insurance Company and The National Casualty Company have transacted business in the Commonwealth of Kentucky while dealing with the Plaintiff in this case, specifically by marketing and providing Plaintiff with an Architects and Engineers Professional Liability Insurance Policy.

3.   On or about December 7, 2019, the Plaintiff purchased an Architects and Engineers Professional Liability Insurance Policy numbered AR 6906 from Defendants. (hereinafter the Policy).  The Policy period dated from December 7, 2019 to December 7, 2020 and applied to any claim arising from a wrongful act on or after December 7, 2014.  The Policy required the Defendants to indemnify or defend the Plaintiff as an insured if a claim was made during the Policy period which was neither reasonably expected or intended from the stand point of the Plaintiff as an insured.  A complete copy of the Policy is attached hereto as Exhibit "A".

4.   On or about March 6, 2020 and during the Policy period, a lawsuit was filed against the Plaintiff in the Jessamine Circuit Court styled: <u>Boone Development, LLC, et al. vs. The City of Nicholasville Planning Commission, et al.</u>, Civil Action No. 20-CI-00182 (hereinafter the "Lawsuit").  In the Lawsuit, a claim of professional negligence was set forth against the Plaintiff.  The Plaintiff timely and properly notified the Defendants of the filing of the Lawsuit and requested coverage under the Policy.

5.   By letter dated April 15, 2020, the Defendant, National Casualty Company, notified the Plaintiff no coverage for the alleged professional negligence was available under the Policy for the claims set forth in the Lawsuit.  Specifically, and among other reasons, the Defendant, National Casualty Company, asserted and alleged that no

coverage was available for the Lawsuit because the claim of professional negligence set forth therein was not made during the Policy period, and because the alleged professional negligence of the Plaintiff had occurred prior to the inception of the Policy period.    The Defendant also alleged no coverage was available under the Policy because Plaintiff failed to disclose the possibility of the claim in its application for the Policy of insurance.

6.  Despite the duty and obligation of the Defendant to defend and indemnify the Plaintiff as an insured from the professional negligence claim set forth in the Lawsuit, by letter dated Aril 15, 2020, the Defendants made known to the Plaintiff their decision to deny coverage available for the Lawsuit under the Policy.   The Defendants lacked a reasonable basis for failing to defend and refusing to indemnify Plaintiff against the damages alleged in the Lawsuit.

7.   The Defendants failure and refusal to defend and indemnify the Plaintiff for the Lawsuit under the Policy constitutes a breach of contract.

8.  Plaintiff petitions this Court for a declaration that the Defendants are obligated to provide insurance coverage, including defense and indemnity to Plaintiff pursuant to the terms and conditions of the Policy.

9.   An actual controversy exists between the Plaintiff and the Defendants regarding the duty and obligations of the Defendants to defend and indemnify the Plaintiff as an insured from the claims set forth in the Lawsuit.  The Court should make a declaration of rights regarding the rights and duties of the parties with respect to the Plaintiff's right to a defense and indemnity from the claims contained in the Lawsuit.

**WHEREFORE,** Plaintiff respectfully demands the following relief:

1.    Judgment be entered declaring the Defendants owe insurance coverage including defense and indemnity to the Plaintiff for any and all claims arising from the Lawsuit.

2.   Judgment awarding Plaintiff its costs and fees as appropriate.

3.   Judgment awarding any and all other relief to which Plaintiff may be entitled.

/s/David Russell Marshall
DAVID RUSSELL MARSHALL
P.O. Box 153
Keene, Kentucky 40339
(859)885-3192
ATTORNEY FOR PLAINTIFF

P:\Sherie\Documents\Complaints\Banks Engineering - Nationwide Insurance Complaint.doc

Package:000006 of 000029

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

Package : 000006 of 000029

Filed       21-CI-00176       03/30/2021          Doug Fain, Jessamine Circuit Clerk

**EXHIBIT "A"**

## DECLARATIONS
### ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY INSURANCE POLICY

Underwritten by: National Casualty Company
Home Office:
One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office:
8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675
A Stock Company

Renewal of Number

NEW

Policy Number
**ARO0006906**

**ITEM 1. NAMED INSURED AND MAILING ADDRESS:**

Banks Engineering, Inc.
1211 Jessamine Station
Nicholasville, KY 40356

**AGENT NAME AND ADDRESS:**

Euclid Managers
234 Spring Lake Drive
Itasca, IL 60143
(630) 238-1900
(630) 773-8590 (FAX)
Agent No: 12528

**ITEM 2. POLICY PERIOD**     From: 12/07/2019     To: 12/07/2020

12:01 A.M. Standard Time at the NAMED INSURED'S mailing address.

**ITEM 3.** RETROACTIVE DATE: .................................................................................................. 12/07/2014

**ITEM 4.** Limits of Liability:
    (A) Each **CLAIM** ..................................................................................... $2,000,000
    (B) Annual Aggregate ............................................................................ $2,000,000

**ITEM 5.** **DEDUCTIBLE** (Amount to be borne by Insured, including **CLAIM EXPENSE**):
    (A) Each **CLAIM** ..................................................................................... $10,000
    (B) Annual Aggregate ............................................................................ $N/A

**ITEM 6.** Premium: .................................................................................................. $12,135.00
Kentucky Surcharge (1.8%): ............................................................................ $    218.43
Kentucky Municipal Tax (9%): ........................................................................ $ 1,092.15
Total Premium: ................................................................................................. $13,445.58

**ITEM 7.** Notice of **CLAIM** shall be given to:
National Casualty Company
Claims Department
Professional Liability Unit
8877 North Gainey Center Drive
Scottsdale, Arizona 85258

**ITEM 8.** Policy and Endorsements attached at inception:

AR-45s-KY (7-03); AR-117s (12-04); AR-137 (3-18); AR-138 (3-18); NOTX0178CW (3-16); UT-COVPG (6-19);
AR-P-1 (10-13); AR-APP-6 (4-19)

### THIS IS A CLAIMS MADE AND REPORTED POLICY. PLEASE READ IT CAREFULLY.

AR-D-1 (1-17)                          Page 1 of 1                           Nationwide

Filed       21-CI-00176       03/30/2021          Doug Fain, Jessamine Circuit Clerk

Exhbiit A

Package:000007 of 000029

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

Package : 000007 of 000029

Filed        21-CI-00176        03/30/2021        Doug Fain, Jessamine Circuit Clerk

# National Casualty Company

**ENDORSEMENT NO. 1**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| ARO0006906 | 12/07/2019 | Banks Engineering, Inc. | 12528 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHANGES—KENTUCKY

Condition 1. **CANCELLATION** of the **CONDITIONS** section of the policy is deleted in its entirety and is replaced by the following:

1. **CANCELLATION.**

    a. This policy may be canceled by the **NAMED INSURED** by surrendering the policy to **US** or any of **OUR** authorized agents or by mailing written notice to **US** stating when the cancellation is to be effective.

    b. If this policy has been in effect for sixty (60) days or less and is not a renewal, **WE** may cancel this policy by mailing or delivering written notice of cancellation to the **NAMED INSURED** at least:

        (1) fourteen (14) days before the effective date of cancellation if **WE** cancel for nonpayment or premium; or

        (2) sixty (60) days before the effective date of cancellation if **WE** cancel for any other reason.

    c. If this policy has been in effect for more than sixty (60) days, or this is a renewal or continuation of a policy **WE** issued, **WE** may cancel this policy only for one or more of the following reasons:

        (1) Nonpayment of premium;

        (2) Discovery of fraud or material misrepresentation made by **YOU** or with **YOUR** knowledge in obtaining the policy, continuing the policy, or in presenting a **CLAIM** under the policy;

        (3) Discovery of willful or reckless acts or omissions on **YOUR** part which increase any hazard insured against;

        (4) The occurrence of a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;

        (5) A violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard insured against;

        (6) **WE** are unable to reinsure the risk covered by the policy; or

        (7) A determination by the Commissioner of Insurance that the continuation of the policy would place **US** in violation of the Kentucky insurance code or regulations of the Commissioner.

    d. If **WE** cancel the policy based on the reasons stated in paragraph 1.c. above, **WE** will mail or deliver a written notice of cancellation to the **NAMED INSURED** at least:

        (1) fourteen (14) days before the effective date of cancellation if **WE** cancel for nonpayment of premium; or

        (2) seventy-five (75) days before the effective date of cancellation if **WE** cancel for any reason stated in paragraph 1.c.(2) through 1.c.(7) above.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2000

AR-45s-KY (7-03)                    Page 1 of 3

Filed        21-CI-00176        03/30/2021        Doug Fain, Jessamine Circuit Clerk

Exhbiit A

Filed      21-CI-00176      03/30/2021        Doug Fain, Jessamine Circuit Clerk

e.  **WE** will give notice to the **NAMED INSURED** at the last mailing address known to **US**.

f.  Notice of cancellation will state the actual reason or reasons for cancellation and the effective date of cancellation. The time of surrender or the effective date and hour of cancellation stated in the notice will become the end of the **POLICY PERIOD**. Delivery of written notice either by the **NAMED INSURED** or by **US** will be equivalent to mailing.

g.  If this policy is canceled, **WE** will send the **NAMED INSURED** any premium refund due. If **WE** cancel, the refund will be pro rata. If the **NAMED INSURED** cancels, the refund will be the customary short rate proportion. **WE** will make the premium refund as soon as practicable after the date of cancellation. However, the premium refund is not a condition of cancellation.

h.  If notice is mailed, proof of mailing will be sufficient proof of notice.

i.  Notice of cancellation will only be sent to the **NAMED INSURED** and will serve as notice to all of **YOU**.

Condition 2. **NONRENEWAL** of the **CONDITIONS** section of the policy is deleted in its entirety and is replaced by the following:

2.  **NONRENEWAL.**

a.  For the purposes of this Condition:

(1) Any **POLICY PERIOD** or term of less than six (6) months shall be considered to be a **POLICY PERIOD** or term of six (6) months; and

(2) Any **POLICY PERIOD** or term of more than one year or any policy with no fixed expiration date shall be considered to be a **POLICY PERIOD** or term of one year.

b.  If **WE** elect not to renew this policy, **WE** will mail or deliver written notice of nonrenewal, stating the reason for nonrenewal, to the **NAMED INSURED**, at the last mailing address known to **US**, at least seventy-five (75) days before the expiration date of the **POLICY PERIOD**.

c.  If notice of nonrenewal is not provided pursuant to this Condition, coverage under the same terms and conditions shall be deemed to be renewed for the ensuing **POLICY PERIOD** upon payment of the appropriate premium until the **NAMED INSURED** has accepted replacement coverage with another insurer, or until the **NAMED INSURED** has agreed to the nonrenewal.

d.  If **WE** mail or deliver a renewal notice to the **NAMED INSURED** at least thirty (30) days before the end of the **POLICY PERIOD**, stating the renewal premium and its due date, the policy will terminate without further notice unless the renewal premium is received by **US** or **OUR** authorized agent by the due date.

e.  If this policy terminates because the renewal premium has not been received by the due date, **WE** will, within fifteen (15) days, mail or deliver to the **NAMED INSURED**, at the last mailing address known to **US**, a notice that the policy was not renewed and the date it was terminated.

f.  If notice is mailed, proof of mailing will be sufficient proof of notice.

The following Condition is added to the **CONDITIONS** section of the policy and supersedes any provision to the contrary:

**RENEWAL.**

a.  If **WE** increase the premium on renewal for the same coverage or risk more than twenty-five percent (25%) of the preceding policy term premium, **WE** will mail or deliver a notice for the renewal premium to the **NAMED INSURED**, at the last address known to **US**, and to the agent, if any, at least seventy-five (75) days before the end of the **POLICY PERIOD**.

b.  **WE** may extend the **POLICY PERIOD** of the current policy at the same expiring premium to comply with the notice as stated in a. above.

c.  If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of written notice by **US** will be equivalent to mailing.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2000

AR-45s-KY (7-03)                          Page 2 of 3

Filed      21-CI-00176      03/30/2021        Doug Fain, Jessamine Circuit Clerk

Exhbiit A

Filed      21-CI-00176      03/30/2021      Doug Fain, Jessamine Circuit Clerk

d.  In addition to the requirements stated in paragraphs a., b. and c. above, **WE** will mail or deliver to the **NAMED INSURED**, at the **NAMED INSURED'S** last address known to **US**, at least thirty (30) days, seven (7) days in the case of a policy with a **POLICY PERIOD** of thirty (30) days or less, before the end of the **POLICY PERIOD**, a notice of the renewal premium or a bill for the renewal premium and **WE** will mail to the agent, if any, a notice of the amount and due date of the renewal premium. In order to comply with this requirement, **WE** may extend the period of coverage of the current policy at the expiring premium.

If **WE** have manifested **OUR** willingness to renew by mailing or delivering a renewal notice, bill, certificate or policy to the **NAMED INSURED** at the **NAMED INSURED'S** last known address to **US** at least thirty (30) days before the end of the current **POLICY PERIOD** with the amount of the premium charge and its due date clearly set forth therein, then the policy will expire and terminate without further notice to the **NAMED INSURED** on the due date unless the renewal premium is received by **US** or **OUR** authorized agent on or before that date. When any policy terminates pursuant to this subsection because the renewal premium was not received on or before the due date, **WE** will, within fifteen (15) days, deliver or mail to the **NAMED INSURED**, at the **NAMED INSURED'S** last address known to **US**, a notice that the policy was not renewed and the date on which the coverage under it ceased to exist.

Package:000010 of 000029

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

Package : 000010 of 000029

_____
AUTHORIZED REPRESENTATIVE                DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2000

AR-45s-KY (7-03)                     Page 3 of 3

Filed      21-CI-00176      03/30/2021      Doug Fain, Jessamine Circuit Clerk

Exhbiit A

Filed        21-CI-00176        03/30/2021        Doug Fain, Jessamine Circuit Clerk

# National Casualty Company

**ENDORSEMENT NO. 2**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| ARO0006906 | 12/07/2019 | Banks Engineering, Inc. | 12528 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### WAIVER OF SUBROGATION ENDORSEMENT

In the event of any **DAMAGES** and/or **CLAIM EXPENSE** paid under this policy, **WE** agree to waive **OUR** rights under Condition 7. **SUBROGATION CLAUSE** of the **CONDITIONS** of the policy against **YOUR** client shown below. This waiver shall apply only to the extent required by a written contract executed before a **CLAIM** is made. This waiver shall not operate to benefit, either directly or vicariously, any other person or organization.

Name of Client: <u>All Clients</u>

_____        _____
AUTHORIZED REPRESENTATIVE                                DATE

AR-117s (12-04)

Filed        21-CI-00176        03/30/2021        Doug Fain, Jessamine Circuit Clerk

Exhbiit A

Package:000011 of 000029

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

Package : 000011 of 000029

Filed        21-CI-00176       03/30/2021         Doug Fain, Jessamine Circuit Clerk

# National Casualty Company

**ENDORSEMENT NO. 3**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| ARO0006906 | 12/07/2019 | Banks Engineering, Inc. | 12528 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTRACTOR SERVICES
## POLLUTION COVERAGE ENDORSEMENT

The definition of **POLLUTION INCIDENT** contained in the **DEFINITIONS** section of the policy is deleted in its entirety and is replaced by the following:

16.   **POLLUTION INCIDENT**—means any actual or alleged negligent act, error or omission **YOU** or any person or entity, including Joint Ventures, for whom **YOU** are legally responsible, commit, but only in the performance of **PROFESSIONAL SERVICES** or **CONTRACTOR SERVICES** that results in the actual or alleged discharge, dispersal, seepage, migration, release or escape of **POLLUTANTS** into or upon land, the atmosphere or any watercourse or body of water and did not arise from dishonest, fraudulent, malicious or criminal conduct committed by **YOU** or at **YOUR** direction or with **YOUR** prior knowledge.

The following definition is added to the **DEFINITIONS** section of the policy:

**CONTRACTOR SERVICES**—means drilling, excavation, or other sampling or testing procedures or construction, remediation or operations performed by **YOU** or **YOUR** subcontractor, but only if necessary to perform **YOUR PROFESSIONAL SERVICES.**

_____     _____

AUTHORIZED REPRESENTATIVE                        DATE

AR-137 (3-18)                                    Page 1 of 1

Package:000012 of 000029

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

Package : 000012 of 000029

Exhbiit A

Filed      21-CI-00176      03/30/2021      Doug Fain, Jessamine Circuit Clerk

# National Casualty Company

**ENDORSEMENT NO. 4**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| ARO0006906 | 12/07/2019 | Banks Engineering, Inc. | 12528 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### COVERAGE ENHANCEMENT ENDORSEMENT

The following **SUBPOENA PROVISION** is added:

If **YOU** receive a subpoena for documents or testimony not related to a **CLAIM**, **WE** will retain legal counsel to advise **YOU** regarding document production or representation in giving sworn testimony. Notice of such subpoena shall be deemed to be a notice of a potential **CLAIM** as stated in the **NOTIFICATION** section in this policy. The **DEDUCTIBLE** shown on the Declarations does not apply to the expenditures **WE** incur under this provision.

The following is added to the **SUPPLEMENTAL PAYMENTS** provision:

**WE** will pay, in addition to **OUR** Limit of Liability, up to $25,000 per **POLICY PERIOD** for the reimbursement of **DISCIPLINARY OR REGULATORY PROCEEDINGS EXPENSES** that result from a **DISCIPLINARY OR REGULATORY PROCEEDING** commenced directly against **YOU** and result from the performance of **YOUR PROFESSIONAL SERVICES**, performed subsequent to the **RETROACTIVE DATE** stated in Item 3. of the Declarations.

Definition 24. **WRONGFUL ACT(S)** is deleted in its entirety and replaced by the following:

24. **WRONGFUL ACT(S)**—means:

    a. Any actual or alleged **PERSONAL INJURY OFFENSE**, negligent act, error or omission **YOU** or any person or entity, including Joint Ventures, for whom **YOU** are legally responsible, commit, but only in the performance of **PROFESSIONAL SERVICES**;

    b. **POLLUTION INCIDENT**; or

    c. A **SECURITY BREACH**.

The following Definitions are added to the **DEFINITIONS** section of the policy:

**DISCIPLINARY OR REGULATORY PROCEEDINGS**—means any formal administrative or regulatory proceeding by a disciplinary or regulatory official, board or agency, commenced by filing of a notice of charges, formal investigative order, service of summons or similar document, to investigate charges of professional misconduct in the performance of **PROFESSIONAL SERVICES**.

**DISCIPLINARY OR REGULATORY PROCEEDINGS EXPENSES**—means reasonable and necessary fees, costs and expenses incurred by **YOU** to investigate, defend or appeal any **DISCIPLINARY OR REGULATORY PROCEEDING**.

**DISCIPLINARY OR REGULATORY PROCEEDINGS EXPENSES** do not include:

    a. Fines, penalties or sanctions assessed against any Insured; or

    b. Expenses, salaries, wages, benefits or overhead of, or paid to, any Insured.

AR-138 (3-18)

Page 1 of 2

Filed      21-CI-00176      03/30/2021      Doug Fain, Jessamine Circuit Clerk

Exhbiit A

Package:000013 of 000029

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

Package : 000013 of 000029

Filed       21-CI-00176       03/30/2021       Doug Fain, Jessamine Circuit Clerk

**PERSONAL INJURY OFFENSE**—means any of the following offenses:

a.   False arrest, detention or imprisonment;

b.   Malicious prosecution;

c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e.   Oral or written publication, in any manner, of material that violates a person's right of privacy.

Package:000014 of 000029

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

Package : 000014 of 000029

JN _(signature)_

_____               _____
AUTHORIZED REPRESENTATIVE                              DATE

AR-138 (3-18)                                    Page 2 of 2

Filed       21-CI-00176       03/30/2021       Doug Fain, Jessamine Circuit Clerk

Exhbiit A

Filed       21-CI-00176       03/30/2021       Doug Fain, Jessamine Circuit Clerk



**Scottsdale Insurance Company**
**National Casualty Company**
**Scottsdale Indemnity Company**
**Scottsdale Surplus Lines Insurance Company**

## CLAIM REPORTING INFORMATION

Your insurance policy has been placed with a Nationwide® insurance company.

Our commitment to you is to provide fast, fair claim service. Promptly reporting an event that could lead to a claim, as required by your policy, helps us fulfill this commitment to you. Please refer to your policy for this and all other terms and conditions.

To report a claim, you may contact us 24 hours a day, 7 days a week, by calling 1-800-423-7675 or via our website at www.nationwideexcessandsurplus.com.

Thank you for your business and as always, we appreciate the opportunity to serve you.

| **HOW TO REPORT A CLAIM** |
|---|
| Call **1-800-423-7675** or visit our website at www.nationwideexcessandsurplus.com. |
| In order to expedite this process, please be prepared to furnish as much of the following information as possible: |
| • Your policy number |
| • Date, time and location of the loss/accident |
| • Details of the loss/accident |
| • Name, address and phone number of any involved parties |
| • If applicable, name of law enforcement agency or fire department along with the incident number |
| **Please refer to your policy for specific claim reporting requirements.** |

NOTX0178CW (3-16)

Filed       21-CI-00176       03/30/2021       Doug Fain, Jessamine Circuit Clerk

Exhbiit A

Package:000015 of 000029

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

Package : 000015 of 000029

Filed        21-CI-00176        03/30/2021        Doug Fain, Jessamine Circuit Clerk



Package:000016 of 000029

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

Package : 000016 of 000029

Underwritten by: National Casualty Company
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675 • A Stock Company

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary

President

The information contained herein replaces any similar information contained elsewhere in the policy.

UT-COVPG (6-19)

Filed        21-CI-00176        03/30/2021        Doug Fain, Jessamine Circuit Clerk

Exhbiit A

Filed       21-CI-00176       03/30/2021        Doug Fain, Jessamine Circuit Clerk

# National Casualty Company
### A Stock Insurance Company, herein called the Company

## ARCHITECTS AND ENGINEERS
## PROFESSIONAL LIABILITY INSURANCE POLICY

**THIS IS A CLAIMS MADE AND REPORTED POLICY.** Coverage is limited to only those **CLAIMS** that are first made against **YOU** and reported to **US** during the **POLICY PERIOD** or Extended Reporting Period, if applicable, as a result of any **WRONGFUL ACT** which occurred prior to the end of the **POLICY PERIOD**. However, if the renewal policy is written by **US**, **YOU** will have sixty (60) days after the expiration date of this policy to report any **CLAIM** first made in this **POLICY PERIOD**.

### INSURING AGREEMENT

**WE** will pay **DAMAGES** which **YOU** become legally obligated to pay and **CLAIM EXPENSE**, as a result of **CLAIM(S)** first made against **YOU** and reported to **US** in writing during the **POLICY PERIOD** or Extended Reporting Period, if applicable, provided that:

1. The **WRONGFUL ACT** giving rise to the **CLAIM** occurred on or after the **RETROACTIVE DATE** shown in the Declarations and before the end of the **POLICY PERIOD**;

2. Notice of the **WRONGFUL ACT** was not given nor required to be given to any prior insurer; and

3. Prior to the inception date of the first policy issued to **YOU** by **US** and continuously renewed by **US**, **YOU** had no reasonable basis to believe that such **WRONGFUL ACT** had been committed or that a **CLAIM** would be made against **YOU** alleging such **WRONGFUL ACT**.

### DEFENSE

**WE** have the right and duty to defend any suit against **YOU** seeking **DAMAGES** because of a **WRONGFUL ACT** even if any of the allegations in the suit are groundless, false or fraudulent. **WE** have the right to appoint counsel and investigate any **CLAIM** or suit. However, **WE** will not settle or compromise a **CLAIM** or suit without **YOUR** written consent.

If the allegation(s) is excluded under this policy, there shall be no duty to defend such **CLAIM**.

**WE** are not obligated to pay any **DAMAGES** or **CLAIM EXPENSE** or defend any suit after the applicable limits of **OUR** liability have been exhausted by payment of **DAMAGES** or **CLAIM EXPENSE**. **WE** have the right, but no duty, to appeal any judgment.

**YOU**, except at **YOUR** own cost and for **YOUR** own account, will not:

1. Make any payment;

2. Admit any liability;

3. Settle any **CLAIM**;

4. Assume any obligation; or

5. Incur any expense

without **OUR** written consent.

Filed       21-CI-00176       03/30/2021        Doug Fain, Jessamine Circuit Clerk

Exhbiit A

## SUPPLEMENTAL PAYMENTS

**WE** will pay, in addition to **OUR** Limit of Liability:

1. All costs taxed against **YOU** in any suit **WE** defend.

2. Interest only on that part of any judgment which does not exceed **OUR** Limit of Liability, which accrues after the entry of the judgment and before **WE** have paid, offered to pay, or deposited in court that part of the judgment that does not exceed **OUR** Limit of Liability.

3. Premium on appeal bonds required in any suit **WE** defend and the cost of attachment or similar bonds.

4. Up to $500 to each of **YOU** for each day or part of the day for **YOUR** attendance at a trial, hearing or arbitration proceeding at which **WE** request **YOUR** attendance. The maximum amount payable by **US** during the **POLICY PERIOD** shall not exceed $5,000 in the aggregate. The **DEDUCTIBLE** shown on the Declarations does not apply to the expenditures **WE** incur under this provision.

5. Up to $50,000 per **POLICY PERIOD** for the reimbursement of **YOUR** reasonable legal fees incurred as a result of a **WRONGFUL ACT** which gives rise to a regulatory or administrative action under the Americans with Disabilities Act (A.D.A.), the Federal Fair Housing Act (F.F.H.A.) or the Occupational Safety and Health Act (O.S.H.A.), which is commenced directly against **YOU** and results from the performance of **YOUR PROFESSIONAL SERVICES**, which were performed subsequent to the **RETROACTIVE DATE** stated in Item 3. of the Declarations. **WE** will not pay **DAMAGES**, fines, taxes or penalties pursuant to this provision.

6. Up to $30,000 per **POLICY PERIOD** for the reimbursement of **YOUR** expenses incurred for the forensic investigation into the cause and extent of a **SECURITY BREACH** affecting **COMPUTER SYSTEMS** and resulting in unauthorized access to **PERSONALLY IDENTIFIABLE INFORMATION** stored on **COMPUTER SYSTEMS**. This reimbursement applies only if the following conditions are met:

   a. **YOU** must first notify **US** of the **SECURITY BREACH** as described in the **NOTIFICATION** section of this policy, and obtain our consent prior to incurring any forensic investigating costs; and

   b. **YOU** are required by law or statute to notify those whose **PERSONALLY IDENTIFIABLE INFORMATION** was accessed.

   The **DEDUCTIBLE** shown on the Declarations does not apply to the expenditures **WE** incur under this provision.

7. Up to $10,000 per **POLICY PERIOD** for the reimbursement of reasonable and necessary **CRISIS EVENT EXPENSES YOU** incur as a result of a **CRISIS EVENT**. This reimbursement applies only if **YOU** first notify **US** of the **CRISIS EVENT** as described in the **NOTIFICATION** section of this policy and obtain **OUR** consent prior to incurring any **CRISIS EVENT EXPENSES**. The **DEDUCTIBLE** shown on the Declarations does not apply to the expenditures **WE** incur under this provision.

8. Up to $75,000 per **POLICY PERIOD** for the reimbursement of **YOUR** expenses incurred to comply with the notification requirements of any applicable local, state or federal privacy or breach of privacy notification laws or statutes, as a result of a **SECURITY BREACH** affecting **COMPUTER SYSTEMS** and resulting in unauthorized access to **PERSONALLY IDENTIFIABLE INFORMATION** stored on **COMPUTER SYSTEMS**. If a portion of the **PERSONALLY IDENTIFIABLE INFORMATION** accessed is not subject to such laws or statutes, **WE** may still reimburse **YOU** for notification expenses, at **OUR** sole discretion. This reimbursement applies only if **YOU** first notify **US** of the **SECURITY BREACH** as described in the **NOTIFICATION** section of this policy. The **DEDUCTIBLE** shown on the Declarations does not apply to the expenditures **WE** incur under this provision.

AR-P-1 (10-13)                    Page 2 of 13

Exhbiit A

Filed        21-CI-00176      03/30/2021          Doug Fain, Jessamine Circuit Clerk

## TERRITORY

This policy applies to **WRONGFUL ACTS** which happen anywhere in the world. **DAMAGES** and **CLAIM EXPENSE** will be paid in U.S. currency.

## DEFINITIONS

Whenever used in this policy, the following words have these meanings:

1. **AUTO**—means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. **AUTO** does not mean or include **MOBILE EQUIPMENT.**

2. **CLAIM(S)**—means an oral or written demand for monetary damages from any party whose intent it is to hold **YOU** responsible for any **WRONGFUL ACT** in performing **PROFESSIONAL SERVICES** or due to a **SECURITY BREACH. CLAIM** also means **YOUR** knowledge of circumstances which could reasonably be expected to give rise to such demand. **YOU** must tell **US** of such **CLAIM(S)** or circumstances in writing during the **POLICY PERIOD** or Extended Reporting Period. Demand includes, but is not limited to, service of suit, institution of arbitration proceedings, or **MEDIATION.**

3. **CLAIM EXPENSE**—means expenditures including, but not limited to:

   a. All expense of lawyers **WE** are required by law to pay to defend **YOU;**

   b. Costs of investigations;

   c. Experts;

   d. Court costs; and

   e. Other similar expenses **WE** incur in the investigation, adjustment, defense or appeal of a **CLAIM** or suit.

   **CLAIM EXPENSE** does not include:

      (1) Salary, charges or expenses of **OUR** regular employees; and

      (2) Payments made under the Supplemental Payments provision of this policy.

4. **COMPUTER SYSTEMS**—means individual and networked computers, including ancillary hardware, software and components, owned, leased or licensed by the **NAMED INSURED. COMPUTER SYSTEMS** also means mobile devices that:

   a. are owned, leased or licensed by the **NAMED INSURED;**
   b. are able to remotely access the **NAMED INSURED'S** network and data stored on the **NAMED INSURED'S** network; and
   c. store and transmit all data in an encrypted format.

5. **CRISIS EVENT**—means any:

   a. **WRONGFUL ACT;**

   b. death, departure or debilitating illness of a member of the board of managers, director, executive officer, natural person partner, owner of a sole proprietorship, principal, risk manager or in-house general counsel of the **NAMED INSURED;**

   c. potential dissolution of the **NAMED INSURED;**

   d. incident of workplace violence; or

   e. other event,

   that the **NAMED INSURED** reasonably believes will have a material adverse effect upon the **NAMED INSURED'S** reputation.

AR-P-1 (10-13)                                    Page 3 of 13

Filed        21-CI-00176      03/30/2021          Doug Fain, Jessamine Circuit Clerk

Package:000019 of 000029

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

Package : 000019 of 000029

6. **CRISIS EVENT EXPENSE**—means expense incurred to engage a public relations consultant to provide reputational management services on **YOUR** behalf, because of a **CRISIS EVENT**.

7. **DAMAGES**—means a monetary judgment, award or settlement.

   **DAMAGES** do not include:

   a. Civil or criminal fines, sanctions, restitution or penalties, whether pursuant to any civil or criminal law or statute; or

   b. Amounts paid to **YOU** as fees, costs or expenses for services performed which are to be reimbursed or discharged as part of the judgment or settlement.

8. **DEDUCTIBLE**—means the amount **YOU** must pay for **DAMAGES** and **CLAIM EXPENSE**.

9. **HOSTILE FIRE**—means a fire that becomes uncontrollable or breaks out from where it was intended to be.

10. **MEDIATION**—means non-binding intervention by a neutral third party.

11. **MOBILE EQUIPMENT**—means any of the following types of land vehicles, including any attached machinery or equipment:

    a. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. vehicles maintained for use solely on or next to premises **YOU** own or rent;

    c. vehicles that travel on crawler treads;

    d. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

       (1) power cranes, shovels, loaders, diggers or drills; or

       (2) road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

       (1) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

       (2) cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not **MOBILE EQUIPMENT**, but will be considered **AUTO(S)**:

       (1) equipment designed primarily for:

          (a) snow removal;

          (b) road maintenance, but not construction or resurfacing; or

          (c) street cleaning;

       (2) cherry pickers and similar devices mounted on an **AUTO** or truck chassis and used to raise or lower workers; and

       (3) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. **NAMED INSURED**—means the person, entity or organization named in Item 1. of the Declarations.

AR-P-1 (10-13)                    Page 4 of 13

Exhbiit A

Filed        21-CI-00176        03/30/2021          Doug Fain, Jessamine Circuit Clerk

13. **PERSONALLY IDENTIFIABLE INFORMATION**—means any information which can be used to distinguish or trace an individual's identity, such as their name, social security number, date and place of birth, mother's maiden name or biometric records, along with other personal or identifying information which is linked or linkable to a specific individual, such as medical, educational, financial, and employment information.

14. **POLICY PERIOD**—means the period of one year following the effective date and hour of this policy or, if the time between the effective date and the termination of the policy is less than one year, such lesser period.

15. **POLLUTANTS**—means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. **POLLUTANTS** does not mean heat, smoke, vapor, soot or fumes from a **HOSTILE FIRE** or explosion.

16. **POLLUTION INCIDENT**—means any actual or alleged negligent act, error or omission **YOU** or any person or entity, including Joint Ventures, for whom **YOU** are legally responsible, commits, but only in the performance of **PROFESSIONAL SERVICES** that results in the actual or alleged discharge, dispersal, seepage, migration, release or escape of **POLLUTANTS** into or upon land, the atmosphere or any watercourse or body of water and did not arise from dishonest, fraudulent, malicious or criminal conduct committed by **YOU** or at **YOUR** direction or with **YOUR** prior knowledge.

17. **PROFESSIONAL SERVICES**—means those services that **YOU** are legally qualified to perform for others in **YOUR** practice as an architect, engineer, land surveyor, landscape architect, construction manager, or as specifically defined by endorsement to this policy.

18. **PREDECESSOR FIRM(S)**—means any individual, partnership or corporation engaged in **PROFESSIONAL SERVICES** in whose financial assets and liabilities the **NAMED INSURED** is the majority successor in interest. An assumption of fifty percent (50%) or greater of the firm's assets and liabilities shall be considered a majority successor interest.

19. **RETROACTIVE DATE**—means the date specified in the Declarations. This policy shall not apply to any **CLAIM** arising from a **WRONGFUL ACT** which occurred prior to this date. If the term "Unlimited" is specified in the Declarations, it means that there is no time limitation of coverage for **YOU** based upon when the **WRONGFUL ACT** occurred.

20. **SECURITY BREACH**—means **YOUR** failure to:

    a. prevent unauthorized access to **COMPUTER SYSTEMS,** as well as the information and data stored therein;

    b. prevent the transmission or insertion of a virus, malicious code or other malicious software; or

    c. allow authorized access to **COMPUTER SYSTEMS,** as well as the information and data stored therein, also referred to as denial of service.

21. **SUBROGATION EXPENSES**—means expenditures including, but not limited to:

    a. All expense of lawyers **WE** are required by law to pay to defend **YOU;**

    b. Costs of investigations;

    c. Experts;

    d. Court costs; and

    e. Other similar expenses **WE** incur in the subrogation process.

22. **TOTALLY AND PERMANENTLY DISABLED**—means total and continuous disability for at least six consecutive months as a result of sickness or accidental bodily injury which renders **YOU** unable to render **PROFESSIONAL SERVICES**.

Filed        21-CI-00176        03/30/2021          Doug Fain, Jessamine Circuit Clerk

Package:000021 of 000029

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

Package : 000021 of 000029

Exhbiit A

Filed       21-CI-00176       03/30/2021       Doug Fain, Jessamine Circuit Clerk

23. **WE, US,** and **OUR**—means the Company providing this insurance.

24. **WRONGFUL ACT(S)**—means:

    a. any actual or alleged negligent act, error or omission **YOU** or any person or entity, including Joint Ventures, for whom **YOU** are legally responsible, commits, but only in the performance of **PROFESSIONAL SERVICES;**

    b. **POLLUTION INCIDENT;** or

    c. a **SECURITY BREACH.**

25. **YOU** and **YOUR**—means Insured and includes:

    a. The **NAMED INSURED** and any **PREDECESSOR FIRM(S).**

    b. Any Individual:

      (1) who is currently or becomes a partner, stockholder or employee of the **NAMED INSURED,** including leased personnel under **YOUR** direct supervision, during the **POLICY PERIOD,** but only for **CLAIM(S)** resulting from **WRONGFUL ACT(S)** committed within the scope of their employment by the **NAMED INSURED** or its **PREDECESSOR FIRM(S);** or

      (2) who was formerly a partner, stockholder or employee of the **NAMED INSURED** or its **PREDECESSOR FIRM(S),** but only for **CLAIM(S)** that result from **WRONGFUL ACT(S)** committed within the scope of their employment by the **NAMED INSURED** or its **PREDECESSOR FIRM(S).**

    c. A retired partner, stockholder or employee of the **NAMED INSURED** acting as a consultant, but only for **CLAIM(S)** resulting from **WRONGFUL ACT(S)** committed within the scope of their association with and under the name of the **NAMED INSURED** or its **PREDECESSOR FIRM(S).**

    d. The estate, heirs, executors, administrators, assigns, and legal representatives of anyone listed in a., b. or c. above in the event of their death, incapacity, insolvency or bankruptcy, but only to the extent that they would otherwise be provided coverage under this policy.

## EXCLUSIONS

This policy does not apply:

1. To any **CLAIM** based upon or arising out of any dishonest, fraudulent, criminal, malicious or intentional **WRONGFUL ACT(S)** committed by **YOU;**

2. To any **CLAIM** based on or arising out of **YOUR** capacity as an officer, director, partner, shareholder or employee of any entity other than the **NAMED INSURED;**

3. To any **CLAIM** arising out of **PROFESSIONAL SERVICES** or advice rendered by **YOU** in connection with any business enterprise not shown on the Declarations:

    a. Which is, was or will be owned in whole or in part by **YOU;**

    b. Which is, was or will be in any way controlled, operated or managed by **YOU** including the ownership, maintenance or use of any property in connection therewith; or

    c. In which **YOU** are, were or will be a partner or employee.

    This exclusion does not apply if, at the time such **PROFESSIONAL SERVICES** or advice was rendered, the **NAMED INSURED** or any insured, separately or in combination, had a total pecuniary or beneficial interest of forty-nine percent (49%) or less in such business enterprise;

4. To any **CLAIM** arising out of any circumstances due to nuclear reaction, radiation or contamination, regardless of cause;

AR-P-1 (10-13)                     Page 6 of 13

Filed       21-CI-00176       03/30/2021       Doug Fain, Jessamine Circuit Clerk

Filed       21-CI-00176      03/30/2021       Doug Fain, Jessamine Circuit Clerk

5. To any **CLAIM** based on or arising out of discrimination, harassment or misconduct by **YOU,** including but not limited to **CLAIMS** based on an individual's race, creed, color, age, sex, national origin, religion, disability, physical or mental handicap, disease, marital status or sexual preference;

6. To any **CLAIM** made by **YOU** against any other Insured. However, this exclusion does not apply to **CLAIMS** made by those insureds whose **PERSONALLY IDENTIFIABLE INFORMATION** has been accessed as a result of a **SECURITY BREACH;**

7. To any **CLAIM** based on or arising out of the cost to repair or replace faulty workmanship in any construction, erection, fabrication, installation, assembly, manufacture or remediation performed by **YOU,** including any materials, parts or equipment furnished in connection therewith;

8. To any **CLAIM** based on or arising out of:

   a. **YOUR** alleged liability under any oral or written contract or agreement, including, but not limited to, express warranties or guaranties; or

   b. the liability of others **YOU** assume under any oral or written contract or agreement,

   except that coverage otherwise available to **YOU** shall apply to **YOUR** liability that exists in the absence of such contract or agreement;

9. To any **CLAIM** based on or arising out of the advising, requiring or obtaining of any form of insurance, suretyship or bond, or failure to do so;

10. To any **CLAIM** based on or arising out of the design or manufacture of any goods or products which are sold or supplied by **YOU,** or by others, under license from **YOU;**

11. To any **CLAIM** based on or arising out of bodily injury or personal injury sustained by any employee of **YOURS** arising out of employment by **YOU;** or any obligation for which **YOU** must pay under any unemployment, workers' compensation, disability benefits or other similar laws;

12. To any **CLAIM** based on or arising out of **PROFESSIONAL SERVICES** for which **YOU** are insured, under any professional liability policy issued for a specific project or projects. This exclusion applies even if **DAMAGES** or **CLAIM EXPENSE(S)** are not covered in whole or in part by that policy for any reason, including, but, not limited to:

   a. An exclusion; or

   b. A reduction or exhaustion of the limit of liability under such policy;

13. To any **CLAIM** arising from a **WRONGFUL ACT** that involves a demand or action seeking relief or redress in any form other than monetary damages, or for any fees, costs or expenses which **YOU** may become obligated to pay as a result of any adverse judgment for declaratory relief or injunctive relief. However, **WE** will afford defense to **YOU** for such actions, **CLAIM(S),** suits or demands in which monetary damages are requested if not otherwise excluded;

14. To any **CLAIM** arising out of a **POLLUTION INCIDENT** involving the ownership, maintenance, use, operation, loading or unloading of any **AUTO,** aircraft, watercraft or rolling stock. Except this exclusion does not apply to:

   a. **MOBILE EQUIPMENT;**

   b. a watercraft **YOU** do not own that is:

      (1) less than twenty-six (26) feet long; and

      (2) not being used to carry persons or property for a charge.

   c. the operation of any of the equipment listed in 8. a., b. or c. in the definition of **MOBILE EQUIPMENT;** or

AR-P-1 (10-13)                              Page 7 of 13

    d. a condition in or on an **AUTO** not owned or operated by **YOU** and that condition was created by the loading or unloading of that **AUTO** by **YOU** or by any person or entity for whom **YOU** are legally liable;

15. To any **CLAIM** arising out of a **POLLUTION INCIDENT** at, onto or from property or facilities which are or were at any time owned or rented by **YOU** or by any person or entity in joint venture with **YOU;**

16. To any **CLAIM** alleging non-compliance with any applicable local, state or federal privacy or breach of privacy notification laws or statutes. However, this exclusion does not apply if **YOU** have, prior to such **CLAIM**, met the notification requirements described in paragraph 3. of the **NOTIFICATION** section of this policy;

17. To any **SECURITY BREACH CLAIM** arising out of mechanical or electrical failure or outage or any disruption or failure of a utility supplied by a third party, including power, communications or connectivity;

18. To any **CLAIM** arising out of an action or order of any domestic or foreign governmental authority or regulatory, administrative, law enforcement or judicial body to confiscate, intercept, monitor or analyze **COMPUTER SYSTEMS** as well as the information and data stored therein, whether with or without **YOUR** authorization.

## INNOCENT INSURED PROTECTION

Whenever coverage under any provision of this policy would otherwise be excluded, suspended, or lost because of:

1. **EXCLUSIONS** relating to any **CLAIM** based upon or arising out of any dishonest, fraudulent, criminal, malicious or intentional **WRONGFUL ACT(S)** committed by **YOU;** or

2. Concealment of a **CLAIM** by any of **YOU,**

**WE** agree that the coverage as would be afforded by this policy will apply to each of **YOU** who did not personally commit or participate in the **WRONGFUL ACT(S)**, or agree to the concealment.

For coverage to apply, **YOU** must notify **US** of the **WRONGFUL ACT(S)** or concealment as soon as **YOU** become aware of them.

## LIMITS OF LIABILITY

Regardless of the number of:

1. **YOU** who are insured under the policy;

2. All persons or organizations who sustain **DAMAGES** payable under this policy; and/or

3. Suits brought on account of coverage afforded by the policy.

**OUR** liability is limited as follows:

1. The Limit of Liability stated in Item 4(A) of the Declarations is the limit of **OUR** liability for all **DAMAGES** and **CLAIM EXPENSE** arising out of each **CLAIM** first made and reported in writing during the **POLICY PERIOD** or Extended Reporting Period, if applicable.

2. The Limit of Liability stated in Item 4(B) of the Declarations is subject to the above provision respecting each **CLAIM** and is the maximum limit of **OUR** liability for each **POLICY PERIOD**. In no event will **OUR** total Limit of Liability be increased by any Extended Reporting Period.

3. **WE** will only be liable to pay **DAMAGES** and **CLAIM EXPENSE** subject to the Limits of Liability in excess of the **DEDUCTIBLE** shown on the Declarations. **YOUR DEDUCTIBLE** for all **DAMAGES** and **CLAIM EXPENSE** in any **POLICY PERIOD** is the Annual Aggregate amount shown in the Declarations. Each of **YOU** under the policy is individually liable for the payment of the **DEDUCTIBLE** amount

AR-P-1 (10-13)                                        Page 8 of 13

Exhbiit A

Package:000024 of 000029

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

Package : 000024 of 000029

Filed        21-CI-00176    03/30/2021      Doug Fain, Jessamine Circuit Clerk

due for each **CLAIM**. In the event that **WE** expend funds for **DAMAGES** or **CLAIM EXPENSE** on **YOUR** behalf, **YOU** will reimburse **US** for such expenditures up to the amount of the **DEDUCTIBLE** shown on the Declarations. Reimbursement of the **DEDUCTIBLE** will be due within sixty (60) days from the date **WE** bill **YOU**. If **WE** and **YOU** agree to use **MEDIATION** and if **WE** and **YOU** resolve any **CLAIM** by **MEDIATION**, **YOUR DEDUCTIBLE** obligation will be reduced by fifty percent (50%) subject to a maximum reduction of $25,000. **DEDUCTIBLE** payments made prior to the application of the above credit will be reimbursed within thirty (30) days of the resolution of the **CLAIM**.

4.  **CLAIM EXPENSE** will be subtracted from the Limits of Liability first as it is incurred for each **CLAIM**. The remaining amount will be the amount available to pay **DAMAGES**.

5.  One or more **CLAIMS** based on or arising out of the same **WRONGFUL ACT** or a series of related **WRONGFUL ACT(S)** of one or more of **YOU** will be considered a single **CLAIM**. Unless otherwise endorsed, the **CLAIM** will be subject to the Limit of Liability in effect at the time such **CLAIM** was first reported in writing to **US**. Only one **DEDUCTIBLE** will apply to such **CLAIM**.

## NOTIFICATION

1.  If during the **POLICY PERIOD** or the Extended Reporting Period:

    a.  **YOU** receive written or oral notice from any party that it is the intention of such party to hold **YOU** responsible for any **WRONGFUL ACT(S)**; or

    b.  **YOU** become aware of circumstances which could reasonably be expected to give rise to such notice,

    then:

    **YOU** will tell us in writing as soon as practicable, but no later than the end of the **POLICY PERIOD** or Extended Reporting Period, if applicable. Any subsequent **CLAIM** made against **YOU** arising out of such **WRONGFUL ACT(S)** shall be deemed to have been made during the **POLICY PERIOD**, but only for **CLAIMS** due to **WRONGFUL ACT(S)** which occurred on or after the **RETROACTIVE DATE** and on or before the end of the **POLICY PERIOD**. No coverage for such **CLAIM** shall exist under any subsequent policy written by **US**. However, if the renewal policy is written by **US**, **YOU** will have sixty (60) days after the expiration date of this policy to report any **CLAIM** first made during this **POLICY PERIOD**.

2.  In the event of any **CLAIM** occurring, written notice to **US** will be given by the person or firm(s) shown under Item 1. of the Declarations. Notice will be deemed to be received if sent by prepaid mail properly addressed to the address shown in Item 7. of the Declarations.

3.  If a **SECURITY BREACH** or **CRISIS EVENT** occurs during the **POLICY PERIOD**, **YOU** must notify **US** within three (3) calendar days of the date of discovery of the **SECURITY BREACH** or **CRISIS EVENT**. The date of discovery is the earlier of:

    a.  The date **YOU** first become aware of facts that would cause a reasonable person to assume a **SECURITY BREACH** or **CRISIS EVENT** has occurred; or

    b.  The date **YOU** receive notice of an actual or potential **CLAIM** including allegations that if true, would cause a reasonable person to assume a **SECURITY BREACH** or **CRISIS EVENT** has occurred.

## CLAIMS REPAIR PROVISION

When **WE** receive **YOUR** written notice and **WE**, at **OUR** discretion, incur **CLAIM EXPENSE** to undertake measures to avoid any **DAMAGES** as a result of the reported **WRONGFUL ACT**, **WE** will waive the applicable **DEDUCTIBLE**.

AR-P-1 (10-13)                               Page 9 of 13

Filed        21-CI-00176        03/30/2021      Doug Fain, Jessamine Circuit Clerk

However, the **DEDUCTIBLE** will always apply if a suit is filed, if arbitration hearings or mediation hearings are begun or if any **DAMAGES** are paid.

## INSURED'S DUTIES IN THE EVENT OF CLAIM OR SUIT

1.  In the event of a **CLAIM**, the **NAMED INSURED** must give **US** written notice of:

    a.  The specific **WRONGFUL ACT**; and

    b.  The injury or damage which has or may result from the **WRONGFUL ACT**; and

    c.  The names and addresses of the claimants or potential claimants; and

    d.  The circumstances by which **YOU** first became aware of such **WRONGFUL ACT.**

2.  If **CLAIM** is made or suit is brought against **YOU**, **YOU** will immediately forward to **US** every demand, notice, summons or other process received by **YOU** or **YOUR** representative.

3.  **WE** will have full discretion in the handling of any **CLAIM**, and **YOU** will give full information and assistance as **WE** may reasonably require. **YOU** will cooperate with **US** and, at **OUR** request, consent to being examined and questioned by **OUR** representative, under oath, if necessary. At **OUR** request, **YOU** will attend hearings, depositions and trials and will assist in effecting settlement, securing and giving evidence, and obtaining the attendance of witnesses. **YOU** will cooperate in the conduct of suits as well as in giving written statements to **OUR** representatives and defense counsel.

4.  Immediately upon discovery of facts or notice of a **CLAIM** that would cause a reasonable person to assume a **SECURITY BREACH** has occurred, **YOU** will take all reasonable steps to protect **COMPUTER SYSTEMS** as well as the information and data stored therein.

## EXTENSION OF COVERAGE

If **YOU** die during the **POLICY PERIOD**, the period for reporting **CLAIMS** is extended until the executor or administrator is discharged or for twenty-four (24) months from the date of death, whichever is less. If **YOU** have been insured by **US** for at least three (3) consecutive years immediately prior to this **POLICY PERIOD** and **YOU** become **TOTALLY AND PERMANENTLY DISABLED** during the **POLICY PERIOD**, the period for reporting **CLAIMS** is extended until the disability ends. No additional premium will be charged for this extension nor will any premium be refunded.

## EXTENDED REPORTING PERIOD

Only the **NAMED INSURED** can exercise the option to purchase one of the Supplemental Extended Reporting Periods described in paragraph 3. of this provision.

1.  One or more Extended Reporting Periods described below will be provided if the policy is canceled or nonrenewed or if **WE** renew or replace coverage with insurance that provides coverage on other than a Claims Made basis.

2.  A Basic Extended Reporting Period is automatically provided without additional charge. This period begins at the end of the **POLICY PERIOD** and lasts for sixty (60) days. The Basic Extended Reporting Period does not apply to **CLAIMS** covered under any subsequent policy.

3.  In addition, the **NAMED INSURED** may purchase one of the Supplemental Extended Reporting Periods described below if **YOU** are in compliance with the terms and conditions of this policy:

    a.  A twelve (12) month Supplemental Extended Reporting Period for one hundred percent (100%) of the full annual premium of this policy; or

AR-P-1 (10-13)                                    Page 10 of 13

Package:000026 of 000029

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

Package : 000026 of 000029

    b.  A twenty-four (24) month Supplemental Extended Reporting Period for one hundred fifty per-cent (150%) of the full annual premium of this policy; or

    c.  A thirty-six (36) month Supplemental Extended Reporting Period for one hundred eighty-five per-cent (185%) of the full annual premium of this policy; or

    d.  A sixty (60) month Supplemental Extended Reporting Period for two hundred fifty percent (250%) of the full annual premium of this policy; or

    e.  An unlimited Supplemental Extended Reporting Period for three hundred percent (300%) of the full annual premium of this policy.

4.  Coverage for a Supplemental Extended Reporting Period must be added by endorsement for which an additional premium charge must be paid. Such period starts sixty (60) days after the end of the **POLICY PERIOD.**

5.  The right to purchase a Supplemental Extended Reporting Period will terminate unless:

    a.  **WE** receive a written request for a Supplemental Extended Reporting Period; and

    b.  The additional premium is paid within sixty (60) days of the end of the **POLICY PERIOD.**

The **NAMED INSURED'S** request must specify the length of the Supplemental Extended Reporting Period desired. Once in effect, Extended Reporting Periods may not be canceled.

6.  An Extended Reporting Period does not extend the **POLICY PERIOD** or change the scope of cover-age provided. Subject otherwise to the policy's terms, Limit of Liability, Exclusions and Conditions, the policy is extended to apply to **CLAIMS** first made against **YOU** and reported to **US** in writing during the Basic Extended Reporting Period or, if purchased, the Supplemental Extended Reporting Period, but only for **CLAIMS** due to **WRONGFUL ACT(S)** which happened on or after the **RETROACTIVE DATE** and on or before the expiration of the **POLICY PERIOD.**

7.  Extended Reporting Periods do not reinstate or increase the policy's Limits of Liability. **CLAIMS** which are first made and reported during the Basic Extended Reporting Period or the Supplemental Extended Reporting Period, if it is in effect, will be deemed to have been made on the last day of the **POLICY PERIOD.**

## CONDITIONS

1.  **CANCELLATION.** This policy may be canceled by the **NAMED INSURED** by surrendering the policy to **US** or any of **OUR** authorized agents or by mailing written notice to **US** stating when the cancella-tion is to be effective. **WE** may cancel this policy by mailing to the **NAMED INSURED** at the address shown on the Declarations a written notice stating when the cancellation is to be effective. **WE** will give the **NAMED INSURED** ten (10) days notice for nonpayment of premium or sixty (60) days notice for any other valid reason.

The mailing of notice will be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice will become the end of the **POLICY PERIOD.** Delivery of writ-ten notice either by the **NAMED INSURED** or by **US** will be equivalent to mailing.

If this policy is canceled, **WE** will send the **NAMED INSURED** any premium refund due. If **WE** cancel, the refund will be pro rata. If the **NAMED INSURED** cancels, the refund will be the customary short rate proportion. **WE** will make the premium refund as soon as practicable after the date of cancella-tion. However, the premium refund is not a condition of cancellation.

Notice of cancellation will only be sent to the **NAMED INSURED** and will serve as notice to all of **YOU.**

AR-P-1 (10-13)                          Page 11 of 13

Exhbiit A

Filed        21-CI-00176        03/30/2021        Doug Fain, Jessamine Circuit Clerk

2. **NONRENEWAL.** If **WE** do not renew this policy, **WE** will mail written notice to the **NAMED INSURED** at least sixty (60) days before the end of the **POLICY PERIOD.** Any changes in the terms and conditions quoted on renewal do not constitute nonrenewal of this policy.

3. **ASSIGNMENT.** Assignment of interest under this policy will not bind **US** unless **WE** endorse the policy in writing assigning **YOUR** interest to another party.

4. **CHANGES.** The terms of this policy will not be waived or changed except by endorsement issued by **US** and made a part of this policy.

5. **MERGERS AND ACQUISITIONS.** All mergers and acquisitions with other firms occurring throughout the **POLICY PERIOD** must be reported to **US** in writing within sixty (60) days of the merger or acquisition, or the next anniversary of this policy, whichever is sooner. **WE** shall have the right to adjust the premium, terms, conditions and exclusions to reflect any shift in exposure created by such merger or acquisition.

6. **CONFLICTING STATUTES.** Any part of this policy which is in conflict with the statutes of the state in which this policy is issued is amended to conform to such statutes.

7. **SUBROGATION CLAUSE. YOU** will transfer to **US YOUR** rights of recovery against any other party for any **DAMAGES WE** have paid on **YOUR** behalf. **YOU** must do everything necessary to secure these rights and do nothing that would jeopardize them.

   **WE** will not exercise **OUR** right to recover against any of **YOU** unless the **DAMAGES** result from any dishonest, fraudulent, criminal, malicious or intentional **WRONGFUL ACT(S)** committed by **YOU.**

   Any amount recovered from subrogation shall be apportioned as follows:

   Any amount recovered shall first be used for repayment of **SUBROGATION EXPENSES;** second, to any **DAMAGES** and/or **CLAIM EXPENSE** paid by **US;** third, to any **DAMAGES** and **CLAIM EXPENSE** paid by an excess insurer on **YOUR** behalf; fourth, to any **DAMAGES** and **CLAIM EXPENSE** paid by any other primary insurer on **YOUR** behalf; and last, to repayment of **YOUR DEDUCTIBLE.**

8. **SEVERABILITY CLAUSE.** The application and any supplements or addendums will be retained on file by **US** and will be deemed as incorporated in and constituting part of this policy along with the Declarations. The particulars and statements contained in the application, any supplements or addendums and the conditions and exclusions set forth in this policy will be construed as a separate agreement with each of **YOU. By acceptance of this policy, YOU agree that the statements in the application are YOUR representations, that they shall be deemed material and that this policy is issued upon the truth of such representations.** Nothing in this provision will be construed to increase **OUR** Limits of Liability as set forth in the Declarations.

9. **OTHER INSURANCE.** If **YOU** have other insurance which applies to **CLAIMS** reported under this policy, **WE** will be excess of the amount of the applicable **DEDUCTIBLE** and any other valid and collectible insurance whether such other insurance is primary, pro rata, contributory, excess, contingent or any other basis, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided in this policy

   If a loss occurs involving two or more policies, each of which provides that its insurance will be excess, then each policy will contribute on a pro rata basis. This means **WE** will pay no more than **OUR** percentage of the total amount of the insurance covering the **CLAIM,** less the **DEDUCTIBLE.** For example:

   The limit of coverage under this policy is $100,000. Another insurance policy with a limit of $300,000 also covers a **CLAIM** covered by this policy. **WE** will not pay more than twenty-five percent (25%) ($100,000/$400,000) of the **DAMAGES** and **CLAIM EXPENSE,** less the **DEDUCTIBLE.**

10. **ACTION AGAINST US.** No action will lie against **US** unless **YOU** have fully complied with all the terms and conditions of this policy prior to bringing the action.

Filed        21-CI-00176        03/30/2021        Doug Fain, Jessamine Circuit Clerk

Package:000028 of 000029

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

Package : 000028 of 000029

11. **INSPECTION AND AUDIT. YOU** agree to allow **US** to examine and audit **YOUR** premises, management procedures and records as they relate to this insurance during normal business hours while this policy is in force. **WE** are not, however, required to make inspections nor will **WE** guarantee that **YOUR** procedures are adequate or that they conform to any laws, rules or regulations.

12. **BANKRUPTCY.** In the event of **YOUR** bankruptcy or insolvency, **WE** will not be relieved of **OUR** obligations under the terms and conditions of this policy.

13. **SOLE AGENT.** By acceptance of this policy, the **NAMED INSURED** agrees to act on **YOUR** behalf with respect to:

    a. Exercising the option to purchase an Extended Reporting Period;

    b. The giving and receiving of notice of **CLAIM(S)** or cancellation; and

    c. The payment of premiums that may become due under this policy.

    Each of **YOU** agrees that the **NAMED INSURED** will act on **YOUR** behalf.

14. **PREMIUM.** All premiums for this policy shall be computed in accordance with **OUR** rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

Exhbiit A