UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BANKS ENGINEERING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 21-107-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NATIONWIDE MUTUAL INSURANCE | ) | **MEMORANDUM OPINION** |
| COMPANY AND NATIONAL | ) | **AND ORDER** |
| CASUALTY COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiff Banks Engineering, Inc.'s motion to remand to Jessamine Circuit Court.  Although the defendants have demonstrated that diversity jurisdiction exists, the Court declines to exercise discretionary jurisdiction in this declaratory judgment action based on its consideration of the factors enumerated in *Grand Trunk W.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).  Accordingly, the case will be remanded to state court.

## I.    Background

Plaintiff Banks Engineering, Inc. ("Banks") seeks a declaration that Defendants Nationwide Mutual Insurance Company and National Casualty Company ("Defendants" or "Insurers") are obligated to provide insurance coverage pursuant to a policy of professional liability insurance.  To appreciate the instant dispute, some explanation of the ancillary matter pending in state court is necessary.

- 1 -

In 2018, "LPW Redevelopment" owned property formerly known as the G.N. Miles Estate, in Nicholasville, Kentucky.  The property was subdivided into four parcels but only Parcels 2 and 3 are relevant here.  LPW entered into a contract with Banks under which Banks agreed to provide the engineering and consulting services necessary to develop Parcel 3 at a rate of $2,500 per acre.  [Record Nos. 1-2 ¶ 15; 13-1]  LPW paid Banks "about $40,000" on an unspecified date, but prior to Banks' completion of the agreed upon work.

The preliminary plat for Parcel 3, as well as LPW's approved construction plans for Parcel 2, show a box culvert or stream crossing within the bounds of Parcel 2.  [Record No. 1-2 ¶ 23]  The Nicholasville Planning Commission permitted the plat for Parcel 2 to be finally approved and recorded, and approved the construction plans for Parcel 2, without requiring LPW to provide surety for the construction of the box culvert.  LPW developed Parcel 2 partially but did not complete the development.  *Id.* ¶ 28.  And LPW did not develop Parcel 3.

Boone Development, LLC ("Boone") purchased Parcel 3 from LPW on or around September 14, 2018.  Boone planned to develop Eastgate Subdivision within Parcel 3, which consists of about 194 lots.  Via Vitae Development, LLC, doing business as James Monroe Homes ("JMH") planned to build and sell homes within Eastgate Subdivision.[1]  Boone alleges that, when it purchased Parcel 3, it assumed LPW's rights and obligations under its contract with Banks regarding the development of Parcel 3.

On July 30, 2019, James Monroe met with Nicholasville City Engineer Tim Cross who informed Monroe that Boone would be required to post a surety for construction of the box culvert.  The Nicholasville Planning Commission had determined that Boone was the owner

---

[1]     James Monroe was the principal for both Boone and JMH.

of the 1.1 acres of Parcel 2 where the box culvert was to be constructed.  Boone denied this, but the Commission subsequently determined that Boone was responsible for the culvert regardless of whether it owned the acreage on Parcel 2 because "it was depicted on the Preliminary Plat and the construction plans for Parcel 3."  *Id.* ¶ 65.  Communications between Monroe and the Commission eventually broke down, which Boone contends hindered development of its property and caused substantial losses.

Boone and JMH filed suit in Jessamine Circuit Court on March 6, 2020, raising a number of claims against the City of Nicholasville Planning Commission, its individual Commissioners, Tim Cross, and Banks Engineering.  Boone alleged that Banks had breached the parties' contract by failing to provide the contracted-for services, that it had been unjustly enriched, and that it had committed professional negligence.

Boone's specific allegations against Banks are as follows:  Banks refused to provide the bargained-for engineering services with respect Parcel 3 and abandoned the project on an unspecified date.  *Id.* ¶ 97.  Banks provided services to develop only 13 acres of the 51.33-acre Parcel 3, despite having agreed to develop the entire parcel.  Boone also alleges it has paid Banks more than $76,000, at least in part, for work that was not performed, and it was required to engage a new engineering firm to cover the services at an increased cost.  *Id.* ¶¶ 99, 103. Finally, Boone contends that, in the event the court determines that it is obligated to post a surety or construct a box culvert on Parcel 2, then Banks has committed professional negligence in its provision of engineering services.  *Id.* ¶¶ 142-45.

Banks thereafter notified Nationwide Mutual Insurance Company and National Casualty Company of the pending claims and requested coverage under an Architects and Engineers Professional Liability Insurance Policy it had purchased on or about December 7,

2019.  [Record No. 1-1, ¶ 3]  By letter dated April 15, 2020, National Casualty Company notified Banks that no coverage was available.  *Id.* ¶ 5.

On December 22, 2020, the Jessamine Circuit Court concluded in "a separately filed but related case," that Boone is obligated "to construct the stream crossing in conformity with the Final Development Plan" that the Planning Commission approved in 2017. [2]  This issue apparently is now pending before the Kentucky Court of Appeals.  [Record No. 11, p. 3]  The parties have not provided any information concerning the status of Boone's claims against Banks.[3]

On March 30, 2021, Banks filed suit against the Insurers in Jessamine Circuit Court, seeking a declaratory judgment that the defendants "owe insurance coverage including defense and indemnity to [Banks] for any and all claims arising" from the underlying lawsuit. Defendants removed the matter to this Court on April 28, 2021, based on diversity jurisdiction under 28 U.S.C. § 1332.  Banks has filed a motion to remand, arguing that the defendants have not shown that the amount in controversy exceeds $75,000.00, exclusive of interests and costs. Banks contends, in the alternative, that this Court should not exercise its discretion to entertain this declaratory judgment action which is based purely on application of state law.  *See, e.g., Nationwide Mut. Fire Ins. Co. v. Hatton*, 357 F. Supp. 3d 598, 609 (E.D. Ky. 2019).

---

[2]     *See Boone Dev., LLC, et al. v. Nicholasville Bd. of Adjustment, et al.*, Civil Action No. 20-CI-494 (Jessamine Circuit Court Dec. 22, 2020).

[3]     Banks asserts that the Jessamine Circuit Court's December 22, 2020 opinion "operates to fully exonerate Banks from any liability for alleged professional negligence associated with the stream crossing or the obligation of Boone to post a $212,498.00 performance bond to insure the construction of that improvement." [Record No. 11, p. 5] However, the state court's December 22, 2020 opinion does not mention Banks and Banks fails to explain how the decision "exonerates" it of liability for professional negligence.

## II.    The Amount in Controversy

When, as here, state practice does not permit the plaintiff to demand damages for a specific sum, the defendant may assert the amount in controversy in its notice of removal.[4] *King v. Graham*, 2018 WL 1748113, at *1 (E.D. Ky Apr. 1, 2018) (citing 28 U.S.C. § 1446(c)(2)(A)(ii) and Ky. R. Civ. P. 8.01(2)).   However, the defendant must establish by a preponderance of the evidence that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  *See id.* (citing *Shupe v. Asplundh Tree Expert Co.*, 566 F. App'x 476, 481 (6th Cir. 2014)).   The removal statute is strictly construed and all doubts must be resolved in favor of remand.  *Id.* (citing *Shupe*, 566 F. App'x at 481).

In an action for declaratory relief, the amount in controversy in measured by the value of the object of the litigation.   *YA Landholdings, LLC v. Sunshine Energy, KY I, LLC*, 871 F. Supp. 2d 650, 652 (E.D. Ky. 2012) (citing *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010)).   Here, that would include the value of Boone's claims against Banks, as well as the value of the defendants' alleged obligation to defendant Banks in the underlying suit.   *See Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 784-85 (E.D. Ky. 2008).

The Court lacks several details regarding the underlying claims against Banks.   For instance, the precise nature and value of the work Banks completed is unclear.   However, it is more likely than not that the amount-in-controversy exceeds $75,000.00, exclusive of interest and costs.   Boone alleges that it paid Banks more than $76,000.00 and it apparently seeks the return of that entire sum under its unjust enrichment claim.   [*See* Record No. 1-2 ¶ 140.]

---

[4]     The defendant has demonstrated that complete diversity exists for purposes of 28 U.S.C. § 1332.   [*See* Record No. 8, Response to Order to Show Cause.]

Further, Boone contends that, if it is required to provide surety for or construct a box culvert, Banks is liable for that amount based on its professional negligence. The surety estimate for the box culvert provided in the Complaint is $212,498.80. *Id.* ¶ 46.

The Court does not consider the merits of the underlying claims in determining whether the amount-in-controversy is satisfied. *Kovacs v. Chesley*, 406 F.3d 393, 396 (6th Cir. 2005). Instead, it examines the claims superficially, only to ensure that the type of damages sought are recoverable under the applicable law. *Id.* Claims for money damages based on breach of contract, unjust enrichment, and professional negligence are recoverable under Kentucky law. *See, e.g., Matherly Land Surveying, Inc. v. Gardiner Park Development, LLC*, 230 S.W.3d 586, 589 (Ky. 2007). Considered in conjunction with the insurers' purported obligation to defendant Banks, it appears that the jurisdictional threshold is satisfied.

### III.    Discretionary Jurisdiction Under the Declaratory Judgment Act

The Declaratory Judgment Act grants federal courts discretion to exercise jurisdiction over claims for declaratory relief, even when the claim otherwise satisfies jurisdictional requirements. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (citing *Brillhart v. Excess Ins. of Am.*, 316 U.S. 491 (1942)). The Sixth Circuit has applied the following factors to determine whether the exercise of federal jurisdiction is appropriate:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

A.    **Factors One and Two: Settlement of the Controversy and Clarification of Legal Relations**

Two conflicting lines of authority have emerged within the Sixth Circuit when determining whether a declaratory action would settle the controversy. *See, e.g., Grange*, 565 F. Supp. 2d at 785-86. One says the federal declaratory judgment action must only settle the insurance coverage dispute. *See id.* at 786 (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555-56 (6th Cir. 2008). A second line of cases holds the declaratory judgment action does not "settle the controversy" for purposes of this analysis unless it settles the ultimate underlying controversy. *See id.* (citing *Travelers Indem. Co. v. Bowling Green Prof'l Assocs.*, 495 F.3d 266, 272 (6th Cir. 2007)).

As in many cases seeking to determine the scope of insurance coverage, this action would clarify the legal relationship between the parties to the instant matter but would do little to settle the underlying state-court controversy. Although the Sixth Circuit has not definitively resolved this split of authority, caselaw indicates that the contrary results reached in individual cases may be explained by their different factual scenarios. *See Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 436 (6th Cir. 2018) (citing *Flowers*, 513 F.3d at 555.) For example, in *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807 (6th Cir. 2004), the court relied on the broader definition of "resolving the controversy" when the insurance coverage dispute turned on a fact-based question of state law (i.e., whether the underlying plaintiff was an employee or independent contractor) that was already being considered in two independent state court proceedings. *Id.* at 814.

Compare this with *Flowers*, 513 F.3d at 546, in which the narrower definition applied. *Flowers* involved a purely legal dispute—namely, the scope of the insurance policy.

Accordingly, the action did not require the district court to inquire into matters being developed in state court.  In concluding that a declaratory judgment would settle the controversy, the court has emphasized that a "prompt declaration of policy coverage would surely serve a useful purpose in clarifying the legal relations at issue." *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

This case falls somewhere between these extremes but, ultimately, the broader approach is more appropriate.  To some extent, it appears that the Court would be required to interpret the parties' insurance contract independent of issues implicated in the underlying state-court litigation.  For instance, Banks' claim allegedly was denied because it was made outside the applicable policy period and because Banks had failed to disclose its knowledge of the claim in its application for the policy.  However, the question of *when* the alleged professional negligence arose is also at issue.  Additionally, the nature of Banks' professional services—particularly its role with respect to the box culvert—is likely to be implicated.  [*See* Record No. 1-3, p. 7, Coverage Enhancement Endorsement]

This overlap between the issues presented to the state and federal courts is underscored by the parties' Planning Report in which they indicate that fact discovery will be required regarding "the events and circumstances leading to the allegations in the underlying action against Plaintiff."  [Record No. 17, p. 3]  Based on the foregoing, it is likely that significant factual questions presented to this Court will be the same as those that have been or will be decided by the state court.  Obviously, this is undesirable as it constitutes an inefficient use of judicial resources and creates the potential for inconsistent results.

Although the undersigned may be able to settle some questions regarding contract interpretation, it is likely that other questions would remain outstanding until the underlying

state-court claims against Banks are resolved.  For example, if Boone is ultimately deemed liable for the cost of the box culvert, it seeks to impose liability on Banks.  Banks would then, in turn, seek indemnification from the defendants.  Put simply, a declaratory ruling by this Court is unlikely to end the controversy between the parties or provide complete clarity regarding the parties' legal relations.  Accordingly, the first two factors weigh in favor of remand.

### B.      Factor Three:  Race to *Res Judicata*

The third factor the Court considers is whether the use of the declaratory judgment action is motivated by "procedural fencing" or is likely to create a race for *res judicata*.  This factor is intended to preclude jurisdiction for "declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum."  *Flowers*, 513 F.3d at 558 (citing *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)).  This does not appear to be a concern here since Banks, the insured, filed this case in state court and the Insurers removed it to this Court. Because there is no indication of an improper motive on the part of the defendants, this factor points toward exercising jurisdiction.

### C.      Factor Four: Friction Between Federal and State Courts

The fourth factor is whether accepting jurisdiction would increase friction between federal and state courts.  When considering this factor, the following three sub-factors are considered:

> (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public

policy, or whether federal common or statutory law dictates a resolution of the
declaratory judgment action.

*Flowers*, 513 F.3d at 560.

The first sub-factor "focuses on whether the state court's resolution of the factual issues
in the case is necessary for the district court's resolution of the declaratory judgment action."
*Id*. While insurance disputes can sometimes be resolved as a matter of law, that does not
appear to be the case here. The issues raised in Banks' Complaint contemplate resolution of
factual disputes that "will require making factual findings that might conflict with similar
findings made by the state court." *Id*. The Sixth Circuit has cautioned that the exercise of
jurisdiction is inappropriate under these circumstances. *Id.*

The second sub-factor asks which court is in a better position to resolve the issues
presented by the declaratory action. While exercising jurisdiction in an insurance case would
not necessarily "offend principles of comity," Sixth Circuit precedent is clear that Kentucky
courts are better suited to adjudicate matters focused on state-regulated insurance contracts.
*See Auto Owners Ins. Co. v. Trip Cat, LLC*, 444 F. Supp. 3d 764, 773 (E.D. Ky. 2020) (citing
*Travelers*, 495 F.3d at 272). Given its expertise regarding the interpretation of Kentucky
insurance contracts and the existence of the overlapping state proceeding, the undersigned is
persuaded that the state court is better situated to resolve the declaratory judgment action.
Accordingly, this sub-factor weighs in favor of remand.

The final sub-factor considers whether the issues in the action implicate important state
policies and, therefore, are more appropriately considered in state court. The Sixth Circuit has
consistently recognized that "issues of 'insurance contract interpretation are questions of state
law with which the Kentucky state courts are more familiar and, therefore, better able to

- 10 -

resolve.'" *Travelers*, 495 F.3d at 273.  While not all issues of insurance contract interpretation "implicate such fundamental state policies that federal courts are unfit to consider them," state courts are best situated to identify and enforce the public policies that form the foundation of insurance regulation.  *Flowers*, 513 F.3d at 561.  Accordingly, this sub-factor also weighs in favor of remand.

### D.    Factor Five:  Whether an Alternative Remedy is Available

A final factor is whether there is an alternative remedy that is better or more effective than the declaratory action.  *Flowers*, 513 F.3d at 562.  For example, courts may consider whether the plaintiff may seek a declaratory judgment in state court or file an indemnity action. *Johnston v. Chubb Grp. of Ins. Cos.*, 2020 WL 4803288, at *5 (W.D. Ky. Aug. 18, 2020). However, in the typical case, it is the insurer who seeks a declaratory action in federal court. Here, Banks brought the declaratory action in state court and the defendants removed it.  The availability of the state court as an alternate remedy weighs against exercising jurisdiction.  *See id.*

### E.    Balancing the Factors

The Court considers the above factors in light of its "unique and substantial" discretion under the Declaratory Judgment Act.  *See Grange*, 565 F. Supp. 2d at 791 (citing *Flowers*, 513 F.3d at 563).  They point heavily toward remand, mainly because this case is so closely connected with matters being litigated in state court.  Boone's lawsuit against Banks and the other state-court defendants has been pending for more than a year and it is clear that the state courts and the parties have invested substantial time and resources in the matter.  Federal courts generally should exercise discretionary jurisdiction under the Declaratory Judgment Act only when doing so would advance the interests of justice or preserve the resources of the parties.

*Id.* at 779.   Because the state court is best suited to resolve state-law questions of contract interpretation and remanding the matter to state court would best preserve the parties' resources and promote consistency, the plaintiff's motion to remand will be granted.

**IV.**

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.      Plaintiff Banks Engineering, Inc.'s motion to remand [Record No. 11] is **GRANTED**.

2.      This matter is **REMANDED** to Jessamine Circuit Court and **STRICKEN** from this Court's docket.

Dated: June 10, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky